## CELLULOID HARNESS TRIMMING CO. (ALBRIGHT v.). See Case No. 147.

---

## Case No. 2,543.

### CELLULOID MANUF'G CO. v. GOODYEAR DENTAL VULCANITE CO.

[13 Blatchf. 375;[1] 2 Ban. & A. 334; 10 O. G. 41.]

Circuit Court, S. D. New York. June 7, 1876.

PATENTS— SALE OF INVENTION — RIGHTS OF PATENTEE — SUIT TO LIMIT PATENT OR HAVE ITS EXTENT DETERMINED —SUIT FOR INFRINGEMENT —PARTIES DEFENDANT — ENJOINING LIBEL OF BUSINESS.

1. The owner of a useful invention has the right to sell it to all who will purchase, subject only to restraint from some party having a conflicting patent. He holds the right from the general law of the land, and needs no act of congress to enable him to make or vend his article, and obtains no such right from congress. He obtains from the patent laws only the power to restrain another from unlawfully making, using or vending his invention.

[Cited in Rein v. Clayton, 37 Fed. 356. Applied in Strait v. National Harrow Co., 51 Fed. 820.]

2. Injuries to the trade or profits or business of a manufacturer do not fall within the preventive scope of the patent laws, but only injuries to the right of the patentee to exclude others from the manufacture, use, or sale of the article for which he has a patent.

[Cited in Flint v. Hutchinson Smoke-Burner Co., 38 Fed. 547.]

---

[1] [Reported by Hon. Samuel Blatchford. District Judge, and here reprinted by permission.]

3. A junior private patentee, who alleges that his patent does not conflict with a prior patent, and asks the court so to adjudge, cannot sustain a bill asking the court to decide that the plaintiff and his licensees are not infringers of the defendant's patent.

4. A suit in effect to limit a patent, or to declare that it does not extend to a certain class of cases, and, pro tanto, to have it adjudged void, can only be sustained by the attorney general, in behalf of the United States.

5. A patentee has the right to sue any one of several alleged infringers of the patent, and to omit others, in his discretion. He cannot be compelled to enforce his right, against his wish.

6. A junior patentee or an alleged infringer cannot reverse this position, and, by making the elder patentee a defendant, compel him to assert his rights as against him.

7. A bill to prevent the publication of a libel injurious to the plaintiff's business can be sustained only when it appears that the statement is malicious as well as false. If made to advance the party's own sales, and upon the reasonable claim that he has the right which he asserts, the action must fail.

In equity. The allegations of the bill were, in substance, as follows:

(1.) On the 7th of June, 1864, letters patent were issued to John A. Cummings for "an improvement in artificial gums and palates." Such letters were reissued on the 10th of January, 1865, and again on the 21st of March, 1865, and, by assignment, the same are now the property of the defendant.

(2.) After becoming such owner, the defendant commenced a great number of suits against dentists, in the various courts of the United States, for alleged infringement of the said letters patent, and which suits are still pending and undetermined in the circuit courts of the United States.

(3.) On the 12th of June, 1870, letters patent No. 105,338 were issued to John W. and Isaiah S. Hyatt, for an "improvement in treating and moulding pyroxyline." The same were surrendered and reissued June 23d, 1874, as No. 5,928.

(4.) This substance is useful, among other purposes, as a holder for sets of artificial teeth.

(5.) On the 28th of March, 1871, letters patent 113,055 were issued to the Albany Dental Plate Company, as assignees of Hyatts and Perkins, an "improvement in dental plates from pyroxyline."

(6.) The plaintiff is the holder, by assignment, of said letters Nos. 5,928 and 113,055.

(8.) The plaintiff is largely engaged in manufacturing blanks, to be used as holders for teeth, under said patents. The substance produced under the patents the plaintiff denominates "celluloid," and the plaintiff is selling large quantities of such holders throughout the United States, together with licenses to use the same.

(9.) The said rights were of great advantage to the plaintiff until interfered with and infringed by the defendant; and its rights have been acquiesced in and recognized by the public generally, and the plaintiff has invested a large amount of capital in the business, which will become valueless unless its exclusive character can be sustained.

(10.) Of the great number of suits brought as aforesaid by the defendant, for alleged infringement of its patent, the great majority have not been defended; but the defendants therein have allowed decrees pro confesso to be taken against them, and the same are still pending before masters, under the usual order of reference.

(11.) In none of said suits has the defendant averred in its bills that the use of celluloid, as a substitute for a vulcanite plate, is an infringement of the Cummings letters patent, nor, except in two instances, have the defendants in such suits ever pleaded that the use of celluloid was not such infringement; nor has such fact, or the question of law involved therein, ever been presented for legal decision, except as hereinafter stated.

(12.) In a suit against one Wolf, commenced in 1872, in an affidavit and answer filed in opposition to a motion for an injunction, Wolf alleged that he used metal or celluloid bases, and that the same were not an infringement of the plaintiff's patent. The court made an order that the defendant be restrained from the use of vulcanite artificial gums and palates, and that the plaintiff have leave to amend its bill. No amendment was ever made, but, as unamended, the bill was, on the 13th of July, 1875, taken as confessed.

(13.) In July, 1875, the defendant and one Josiah Bacon commenced an action against one Eben M. Flagg, upon a printed bill in substance like that in the suit against Wolf and the other suits referred to, containing no allegation that the use of celluloid blanks was an infringement of the Cummings patent. Annexed to the bill was a copy of the specification of 113,055, various affidavits, and a copy of the deposition of Henry J. Fisk, given in a suit of Goodyear Dental Vulcanite Co. v. Preterre [Case No. 5,595], and sets of celluloid teeth and of vulcanite teeth. There was, also, upon all of these papers, a notice of motion for preliminary injunction. Flagg had purchased his celluloid blanks of the plaintiff, and was using them in his business. The plaintiff assumed the defence of Flagg's suit, to the knowledge of the defendant. The motion was heard upon the issue presented by the letters patent of the plaintiff and defendant in this suit, and, on the 7th of December, 1875, Judge Blatchford made an order denying the motion, on the ground that it was not sufficiently clear that the defendant's process was embraced in the plaintiff's claim, to warrant the granting of an injunction, until one should be granted as the result of a final hearing of the case. Certain allegations were made by the present defendant on the application, that proofs in a suit against

William H. Dwinelle were on file, and that they were identical with the proofs taken in a suit against Daniel H. Smith, and that the record against Smith constituted a part of the proofs on that motion, and that the question of the conflict between the patents now in question would thus be presented as a question of law, and plaintiff supposed the suit against Flagg would be proceeded in, and the question now at issue would thus be presented for decision, but, on the 23d of December, 1875, the plaintiff in that suit discontinued it by an order, reciting as reasons, that Flagg had demurred to the bill on account of the misjoinder of Bacon as a plaintiff therein, and also the great pressure of business and delay of hearing in this circuit court.

(14.) Such discontinuance was not made for the reasons mentioned, but was illusory, and to prevent the entry of an order on Judge Blatchford's decision, to prevent a final hearing, and to enable the defendant to initiate a new means of harassing the dentists who purchased under the plaintiff's patent, and to restrict and impair the plaintiff's income therefrom.

(15.) Since Judge Blatchford's decision, the defendant has caused notice to be given to the dentists using the celluloid blanks, not to use the same; that such use was an infringement of the Cummings patent; and that, if persisted in, such persons would be prosecuted as infringers. Such notice was given to dentists residing in various states and circuits, who communicated the same to the plaintiff, asking protection against such claim, and this plaintiff has agreed to afford such protection. To do this would involve the plaintiff in a multitude of suits in various circuits, would subject it to great expense and annoyance, and would practically involve such enormous costs as would render the plaintiff's patents valueless.

(16.) Since Judge Blatchford's decision, the defendants have moved in the circuit courts in Maryland, Pennsylvania, and Michigan, for references to masters, and commenced the taking of accounts in suits in which the defendants have suffered the bill to be taken pro confesso. Such defendants are not of sufficient ability to defend such suits, but yield a ready assent to any request that may be made of them, the infringement being ostensibly proved and admissions procured in evidence of the Preterre suit and also of the Smith suit in Massachusetts. In a suit brought by defendant and Bacon against Jared Kibbee, the master made his report, which contains, among other things, an admission of the printed record in the Preterre case referred to, and reports damages to the amount of $220. The plaintiff had no knowledge of the Kibbee suit. Kibbee was not represented by counsel, was ignorant of his rights, and the evidence by the said records, and also of the celluloid blanks which he had used, was illegal and incompetent. The only question referred to the master was, whether Kibbee had sold vulcanite dental plates in infringement of the Cummings patent, and the question whether the use of celluloid blanks was an infringement of the Cummings patent was not passed upon prior to the order of reference, and was not referred to the master; and whether the use of celluloid did constitute such infringement, could only be passed upon at the final hearing in a suit brought for that purpose.

(17.) In another suit, brought by the same parties against one Hoopes, in Maryland, he allowed a decree to go against him for the use of vulcanite dental plates. He had been, and, so far as plaintiff knows, was, at the time of instituting said suit, an agent of the defendant, and a stockholder in its company. Hoopes was summoned to appear before the master. The plaintiff's counsel attended at the day appointed, and found that Hoopes had, on the previous day, consented to the admission of the records in the Preterre and Smith cases. Plaintiff's counsel then stated to the master the position of the case, whereupon the said Bacon, who was present, stated that they would make no claim against the defendant for the use of celluloid blanks, and an entry to that effect was made in the proceedings.

(18.) The Preterre suit was commenced in December, 1874, for his having manufactured, used, and sold vulcanite dental plates. Preterre was defended by counsel not of plaintiff's employment, who were not acquainted with its rights, nor with the facts in relation to celluloid, as hereinbefore stated, and who made defence solely on the ground of the invalidity of the Cummings patent; and they did not bring in issue the question between celluloid plates and vulcanite plates. Fisk was examined as a witness. Preterre endeavored to establish that the plates he used, which were testified to be vulcanite, were in truth celluloid, and on this point Fisk was examined as a witness. Preterre afterwards abandoned his attempt to prove a similarity between the two substances, and, in June, 1875, he requested Hyatt to appear as a witness in his behalf. Renwick was afterwards examined as a witness against Preterre, and this plaintiff requested its counsel, Mr. Baldwin, to appear and cross-examine him; and this plaintiff made no other appearance in that case than that one of its counsel conducted such cross-examination. Preterre did not assume to present the right under this plaintiff's letters patent, nor the state of the art. The defendant's counsel in that case was also induced to admit in evidence the record in the Smith case.

(19.) The production of the Preterre record before the master is for the purpose of establishing an identity between the vulcanite and the celluloid plates, and the introduction of the same under the pretence that this plaintiff was a privy to the same, is a fraud and an attempt to create a belief that that record

is a full presentation of this plaintiff's case, and an attempt to gain an unjust advantage.

(20.) This defendant caused the record in the Kibbee case, after Kibbee had consented as aforesaid, to be printed continuously with the Preterre case, and to be served upon Mr. Baldwin, this plaintiff's counsel, for the purpose of binding this plaintiff thereby; and similar proceedings have been taken in other cases.

(21.) The legal rights of the plaintiff, as herein averred, have not been properly presented to any tribunal, save in the Flagg case, and an attempt to create the impression that they have been before the court is unfounded. This plaintiff has offered to waive the misjoinder of Flagg, and has requested this defendant to proceed in that suit, which it refuses to do.

(22.) By other suits plaintiff is needlessly subjected to great loss in conducting the same, and in loss of revenue; and, by reason thereof, many dentists are deterred from purchasing celluloid blanks, and thereby this defendant obstructs and retards the plaintiff in the legal use of its exclusive privilege.

(23.) The defendant claims that the celluloid blanks are an infringement of its patent, and that it has a legal right to arrest the manufacture of the same. The plaintiff avers and insists that such claim is unfounded.

(24.) The plaintiff is lawfully engaged in prosecuting the said business, and its right is invaded and infringed by the written and verbal threats of the defendant to prosecute those who make purchase of said blanks, and by its illegal prosecution of such multiplicity of suits, and by giving notice of its intention to hold responsible those who use the celluloid blanks, by reason whereof the plaintiff is injured in its business.

(25.) The Cummings patent is void for the various reasons set forth.

(26.) The rights of the parties are solely under the patents referred to, and depend upon whether the Cummings patent is valid, and, if so, whether the same interferes with the letters patent of the plaintiff; and such questions should properly be decided in a suit between the owners of the respective patents.

Wherefore the plaintiff prays: 1. That this court will entertain jurisdiction of this suit, to determine whether the Cummings patent is valid, and, if it is, whether the defendant is entitled to interfere with the celluloid dental blanks, as an infringement thereof; 2. that, in case it shall be held that celluloid is not an infringement of the Cummings patent, a final decree be entered, enjoining the defendant from commencing or prosecuting any actions against this plaintiff, or any dentists purchasing celluloid blanks from it; 3. that, in the event of such decree, an account may be taken of the profits it has made by such obstruction and interference with the plaintiff's business, and of the profits it has made by the sale of vulcanite plates to those who had theretofore been the customers of the plaintiff in the use of celluloid blanks, and of the profits which the defendant has made and the plaintiff has lost by means of the acts aforesaid; 4. that a preliminary injunction may issue restraining the defendant and its agents, during the pendency of this suit, from making threats of prosecution for using celluloid blanks, or sending letters or circulars cautioning against the use of celluloid blanks, and from proceeding in any suit now pending for the use of celluloid; 5. for costs and such other or different relief as to the court may seem meet; 6. for a subpoena in the usual form, and for a preliminary injunction during the pendency of this action, as hereinbefore prayed for. The defendant demurred to the jurisdiction of the court, setting forth the following causes: 1. The bill is filed by a citizen of New York against a citizen of the same state; 2. the United States are not parties plaintiff, or petitioners; 3. the suit does not arise under the constitution or laws of the United States; 4. the bill is not brought in the name of the United States, or its attorney general; 5. the bill contains no equity whereon relief can be given; 6. the plaintiff has an adequate remedy at law, if the facts stated in the bill constitute any cause of action.

William D. Shipman, Clarence A. Seward, and E. Luther Hamilton, for plaintiff.

Edward N. Dickerson and Benjamin F. Lee, for defendant.

HUNT, Circuit Justice. This case comes before the court in a double aspect. It is presented, first, in the form of a motion for a preliminary injunction, which is based upon the bill of complaint, and upon affidavits and documents furnished by the respective parties. It is presented, secondly, upon a demurrer to the bill of complaint. The question upon the equity of the bill has been fully argued, as has also the propriety of issuing a preliminary injunction, upon the case made by the additional evidence. The question that presents itself first, in the natural order of things, is upon the sufficiency of the bill; in other words, is the demurrer well taken?

The plaintiff alleges itself to be the owner of a useful invention, in the manufacture of plates for holding artificial teeth. By the general laws of the land, state as well as national, it has the right to sell that improvement to all who think it of sufficient value to induce them to purchase it, subject only to restraint from some party having a conflicting patent. So far as its own use or manufacture is concerned, it needs no act of congress to enable it to make, use and vend the article, and it obtains no such right from congress. The benefit of the patent laws is, that the plaintiff may prevent others

from making, using or vending its invention. To itself, to its own right to make, use or vend, no right or authority is added by those statutes. When a stranger shall thus make, use or vend its manufacture, the patent laws enable it to restrain such use, and to recover damages therefor. Do the subjects of complaint in the bill set forth fall within this right of action given by the patent laws? Are not the injuries complained of injuries to the trade, the profits and the business of the plaintiff, as carried on by itself, for which it has and needs no patent authority, rather than injuries to the right of the patentee to exclude others from such sale or manufacture? It is to this latter class only that the patent laws apply, and for injury to those rights only that actions under the patent laws can be sustained. See Hawks v. Swett, 4 Hun, 149, 150, where this principle is fully set forth.

The bill contains a prayer that the defendant's patent may be adjudged to be void and of no effect. On the argument it was, however, conceded, that, for the purpose of the present proceedings, that patent must be held to be valid. It has been adjudged to be valid, in numerous cases in the circuit courts, tried before different judges, and, until held otherwise by the supreme court, must be taken to be a valid patent.

The plaintiff is the owner of certain other patents issued to the Hyatts and to Perkins, for an "improvement in dental plates from pyroxyline." These are commonly called celluloid plates. In the 24th section of the bill of complaint it is averred that the defendant claims that the use of the celluloid blanks is an infringement of the Cummings letters patent. This claim, it is alleged, has no lawful foundation, and it is averred that the true construction of the Cummings patent does not support the same, or give to the defendant any right to interfere with or arrest proceedings under it. Notwithstanding this allegation, the plaintiff insists, and such is the object of its bill, that the court shall decide whether, if the plaintiff or those who hold its licenses shall make or vend its articles patented, it would amount to an infringement of the defendant's patent. In my judgment, such an action cannot be sustained. No case has been cited to me, nor do I think any can be found, sustaining an action by a junior private patentee, who alleges that his patent does not conflict with the prior patent, and who asks the court so to adjudge. It is, in substance, a suit to limit the effect of a patent, to declare that it does not extend to a certain class of cases, and, pro tanto, to have it adjudged to be void and of no force. Such an action can only be sustained by the attorney general, in the name and on behalf of the United States. Mowry v. Whitney, 14 Wall. [81 U. S.] 434.

To allow the action is to reverse the proper position of the parties. Whoever receives letters patent from the United States receives thereby a prima facie right to maintain an action against every infringer of the right given by such letters. While it is true that such right is prima facie only, and that the holder must be prepared to maintain it in the courts when attacked, it is still a right on his part to sue such alleged violators. The present action would convert the right to sue into a liability to be sued, which is quite a different thing. The defendant holds the Cummings patent. It finds that the patent is infringed and its rights injured by A., B. and C., in the state of New York, and E., D. and F., in the state of New Jersey, and so on through the alphabet. The defendant has a right of action against each one of these individuals. It has a right to sue the whole of them. It has the right to sue any one of them, and to allow the others to go undisturbed. While it would not be a highminded theory, I know of no principle that, as matter of law, would prevent its seeking the feeblest of them all, the one least able to defend himself, and to make a victim of him. If that individual shall appear to have infringed upon this defendant's patent, he is liable to the damages, although he may be poor, unable to defend himself, although others have offended in a greater degree, and although we may condemn the spirit which selected him as the particular defendant. On principle, this cannot be doubted. But, the plaintiff seeks to reverse this action, by making the elder patentee a defendant, at the suit of a particular offender, and to compel him, whether he chooses or does not choose, to assert his rights as against him.

Again, such a suit gives no practical result in the settlement of the question. Suppose it to be decided in this suit, that the celluloid preparation is not an infringement of the Cummings patent. Nothing is settled except as between the two parties present as litigants. If the defendant should afterwards sue a dentist in Michigan for infringing its patent, the judgment in the present case would be no evidence against it, to show that there was no infringement. It would be inter alios acta and not competent; and so, if the judgment should be the other way, the defendant could not have the benefit of the decision, as against another alleged infringer. Each plaintiff and each defendant can litigate his own case, and is not bound by decisions in other cases, to which he was not a party, and which he had no opportunity to litigate. Such is the rule of law, and its necessity, to avoid collusive judgments and fraudulent combinations, is too obvious to need defence.

The cases of Axmann v. Lund, L. R. 18 Eq. Cas. 330, and Rollins v. Hinks, L. R.

13 Eq. Cas. 355, give countenance to the suggestion that the bill in this case may be sustained, to prevent the publication of libels injurious to the plaintiff's business. The case of Prudential Assur. Co. v. Knott, 10 Ch. App. 143, is a subsequent case, and is to the contrary. It is to be said further, in answer to these cases: 1st. They were based upon the theory that the defendants made their claim and published their injurious circulars, but refused to bring suits to sustain them. The record here shows that numerous suits have been brought, and that at least four suits, to wit, those against Silliman, Kibbee, Hoopes and Greene, are specifically proved by the evidence, in the first two of which the defendant has obtained decrees that the celluloid is an infringement of the Cummings patent, and in the other two the proceedings are still pending before the masters. 2d. No such action at law or in equity can be maintained unless it is established that the publication is malicious and for the purpose of injuring the other party. If made to advance the publisher's own sales, and upon a reasonable claim that he has the right which he asserts, the action must fail. Wren v. Weild, L. R. 4 Q. B. 730.

Upon the same point is the case of Hovey v. Rubber-Tip Pencil Co., 57 N. Y. 119, which was an action to restrain the defendant from publishing notices injurious to the plaintiff's business. It was a case of alleged conflicting patents, in which the defendant cautioned all persons against using the plaintiff's invention, alleging his intention to prosecute all infringements. The court held: 1st. That the questions presented arose directly upon the patent laws of the United States, and hence were not within the jurisdiction of the state courts; citing Dudley v. Mayhew, 3 N. Y. 9, and Middlebrook v. Broadbent, 47 N. Y. 443; considering, also, Gibson v. Woodworth, 8 Paige, 132, and Burrall v. Jewett, 2 Paige, 134. 2d. That, to justify the action as a slander of title, the proceedings must appear to have been unfounded not only, and the statements false, but malicious. If the defendant believed its statements to be correct, it merely discharged a moral obligation and satisfied the demands of fair dealing, in making the publication.

It is contended, also, that ground for filing the bill is found in section 4918 of the Revised Statutes of the United States, in relation to interfering patents. That section is as follows: "Whenever there are interfering patents, any person interested in any one of them, or in the working of the invention claimed under either of them, may have relief against the interfering patentee, and all parties interested under him, by suit in equity against the owners of the interfering patent; and the court, on notice to adverse parties, and other due proceed-ings had according to the course of equity, may adjudge and declare either of the patents void in whole or in part, or inoperative, or invalid in any particular part of the United States, according to the interest of the parties in the patent or the invention patented. But no such judgment or adjudication shall affect the right of any person except the parties to the suit, and those deriving title under them subsequent to the rendition of such judgment." The sixteenth section of the act of July 4, 1836 [5 Stat. 123], and the act of July 8, 1870 [16 Stat. 207], make corresponding provisions on this subject. To give the plaintiff the benefit of this statute, it must abandon the allegation of its bill, that the celluloid is not an infringement of, or interference with, the Cummings patent. It must assume the ground there imputed to the defendant, that these two patents do conflict and interfere, and there unqualifiedly denied by the plaintiff, and must assume the position there imputed to the defendant, of the identity of celluloid or collodion dental plates with the subject of the defendant's patent. The argument of the defendant is, that celluloid or collodion was a well known agent when the plaintiff's patent was obtained, known as an equivalent for vulcanite in the manufacture of dental plates, and that there could, therefore, be no patent lawfully issued for the application of collodion to dental plates. The Cummings patent is upheld upon the theory that the vulcanite possessed qualities not found in any other material used for that purpose, and that the mode of manufacture was different from that in which any other artificial set of teeth had been made. The Hyatt dental patent, it is argued, exhibits no novelty in the quality of the result produced or in the mode of manufacture. Until the plaintiff shall be prepared to assert that the two patents are substantially for the same invention, that its patentee is the real discoverer of the invention therein set forth, and that the defendant has wrongfully and improperly appropriated the fruits of his invention, I do not see how the statute respecting interfering patents can be invoked. See Curt. Pat., last chapter.

In reaching this conclusion, I do not assume either that the plaintiff's patent is void, or that it is an infringement of the Cummings patent. No opinion is intended to be intimated upon those points. Under this branch of the case, the suggestion is, simply, that a case of interference is not presented, where the plaintiff avers that there is no interference. An averment that the defendant claims an interference, and a denial of such claim by the plaintiff, cannot authorize the plaintiff to ask a settlement as for an interference. The prayers and the relief to be afforded to the plaintiff must be upon the facts as it claims them to exist,

not as the defendant claims and which the plaintiff denies.

It is said, lastly, that jurisdiction to sustain the present controversy is found in section 1 of the act of March 3, 1875 (18 Stat. 470), which provides as follows: "The circuit courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, and arising under the constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or in which the United States are plaintiffs or petitioners, or in which there shall be a controversy between citizens of different states, or a controversy between citizens of the same state claiming lands under grants of different states, or a controversy between citizens of a state and foreign states, citizens, or subjects." The jurisdiction of the federal courts, under the constitution and laws of the United States, depends upon two points—First, as arising from the subject-matter of the controversy; and, second, as dependent upon the character of the parties. Cohens v. Virginia, 6 Wheat. [19 U. S.] 378. See Matthews v. McStea, 20 Wall. [87 U. S.] 646; Littlefield v. Perry, 21 Wall. [88 U. S.] 222. The act of 1789 made the jurisdiction of the circuit courts dependent upon the character of the parties. The act of 1875 has altered this rule, and gives to that court jurisdiction in all cases in law and equity arising under the laws and constitution of the United States. It cannot be doubted that controversies arising upon conflicting claims to or under patents issued under the laws of the United States are cases arising under the laws of the United States. It is upon this theory that the circuit courts have, from the foundation of the government, entertained jurisdiction of patent cases. This principle has been assumed in the previous parts of this opinion, and its existence does not relieve from the difficulty now pressing upon us. The objection is not, that, in its subject-matter, the case does not present one of federal jurisdiction, to wit, the adjustment of conflicting claims under the patent laws of the United States, or the awarding of damages for an infringement of such patents, but the question is, whether, in the form in which the facts are presented, the plaintiff can sustain his bill or is entitled to an injunction. The act of 1875 does not touch this point.

Upon the principles already laid down, I am of the opinion that this action cannot be sustained, and that the demurrer must be upheld. It follows, that the motion for the injunction must be denied. A preliminary injunction cannot be granted when it is conceded that the plaintiff must finally fail in his action.