ORLANDO B. HASTINGS AND FRANCIS TODD, Appellants, *v.* THE GILES LITHOGRAPHIC COMPANY, Respondent.

*Action to recover damages resulting from a slandering of the plaintiff's right to publish and sell lithographs for advertising purposes, by a person claiming to have the exclusive right to do so — the falsity of such claim and malice in its assertion must be proved.*

In an action, brought against a domestic corporation, the complaint alleged that in the course of their trade the plaintiffs were applied to by various merchants to publish and sell to them two novel and popular lithographs to be used in their respective trades as advertising cards; that the defendant, which was also engaged in the lithographic business, knowing the premises, willfully and maliciously, and with the declared object of injuring the plaintiffs and destroying their business, caused letters to be written to the customers of the plaintiffs threatening them with legal proceedings if the said lithographs were used, and

spread the report that the defendant alone had the right to produce the lithographs in question.

*Held,* that the plaintiffs were bound to prove that the claim made by the defendant, that it alone had the right to produce the lithographs in question, was maliciously made.

*Steward* v. *Young* (L. R., 5 C. P., 126); *Kendall* v. *Stone* (5 N. Y., 14); *Hovey* v. *The Rubber Tip Pencil Company* (57 id., 119); *Celluloid Manufacturing Company* v. *Goodyear* (13 Blatch., 375); *Burnett* v. *Tak* (45 L. T. [N. S.], 743) followed.

That, as it was conceded on the trial that the defendant had, what was claimed by it to be, an exclusive license, that the first requisite of the plaintiffs' cause of action was wanting.

That, as the evidence showed that the defendant believed in its ownership of a license, and proceeded to enforce its rights by the employment of competent counsel, who, after an examination of the subject, wrote a letter to the plaintiffs, notifying them of the defendant's rights, and forbidding the plaintiffs to use or dispose of the lithographs, and advised the adoption by the defendant of the course pursued by it, and as the manner in which the defendant sought to protect itself was cautious, and, under all the circumstances, could not create any other impression than that it was doing what a careful business man would do to protect his interests, and as the right to give such notices had been recognized and declared to be a duty in the protection of a patent, that the maintenance and assertion of its rights could not be construed to be malicious.

*Halsey* v. *Brotherhood* (L. R., 15 Ch. Div., 514; affirmed 19 id., 386) followed.

That as the plaintiffs failed to show their superior ownership of, and right to use the lithographs, or the falsity of the defendant's claim to them, or malice in its assertion of its right to do so, the court did not err in refusing to leave the question of malice to the jury.

APPEAL by the plaintiffs from a judgment ordered by the court, upon the trial of this action at the New York Circuit, dismissing the complaint upon the merits, which was entered in the office of the clerk of the city and county of New York on November 10, 1887.

The action was brought to recover for damages to the plaintiff's business.

The complaint alleged that the plaintiffs were extensively engaged as jobbers in card-board and cut-boards and that the defendant was a domestic corporation.

That in the course of their trade the plaintiffs were applied to by various merchants to publish and sell to them certain cards to be used in their respective trades as advertising cards; that the orders given by said merchants, being orders for two novel and popular lithographs, would have been highly profitable to the plaintiffs but for the defendant's wrongful interference.

That the defendant, which was also engaged in the lithographic business, knowing the premises, willfully and maliciously, and with the declared object of injuring the plaintiffs and destroying their business, caused letters to be written to the said customers of the plaintiffs threatening them with legal proceedings if the said lithographs were used, and spread the report as widely as possible that the defendant alone had the right to produce the lithographs in question.

A motion to dismiss the complaint was made at the end of plaintiffs' case and was granted.

The plaintiffs' evidence established the following facts:

That about March, 1885, the plaintiffs received a letter from a customer in Chicago, named Clarke, inclosing one of a set of two lithographic cards, made by the defendant, and requesting the plaintiffs to see the defendant and make a bargain with it for 150,000 or 200,000 of the two designs. The card inclosed was merely a sample, or what is called in the printing trade a draft. The one card represented the head of a little girl in a Mother Hubbard cap, and the other card represented the head of a little boy in a Turkish fez. The first card was called "Alberta" and the other "Little Turk." These cards the defendant had, at the request of the Fuller & Warren Company, of Chicago, sent to them in February, 1885, as sample cards of its work, and had stated a price for them. The Fuller & Warren Company delivered the cards to Clarke to be imitated by him, and Clarke forwarded them to plaintiffs with the request to see the defendant as aforesaid. Instead of seeing the defendant, plaintiffs offered to furnish the cards themselves, and on March 18, 1885, they received an order from Clarke for 200,000 of these two designs at the lump price of $340. Plaintiffs thereupon imitated defendant's cards, and printed 224,000 for Clarke. These cards were shipped to Clarke. In addition to the 200,000 made for Clarke, plaintiffs printed an additional quantity of 169,000, which they sold prior to May 20, 1885, to Cassell & Co., McCann, Fridenstein, Hardy & Co., and West Side Tailoring Company. On April twenty-third the said Clarke wrote to the White Sewing Machine Company, customers of defendant, for whom it had made, in the fall of 1884, the cards in question, offering to let them have a lot of the same cards at a reduced price. The White Sewing

Machine Company wrote to defendant on April 27, 1885, complaining of this. Thereupon, on May 20, 1885, the defendant caused the following letter to be sent by their attorneys to plaintiffs, Clarke and Fuller & Warren :

> " FRANKENHEIMER & ROSENBLATT,
>
> " COUNSELORS AT LAW.
>
> " EQUITABLE BUILDING, 120 BROADWAY, }
> " NEW YORK, *May* 20, 1885. }
>
> " Messrs. HASTINGS & TODD :
>
> " GENTLEMEN. — We understand that you are using and disposing of an advertising card containing the picture of a little boy in a red fez cap, known as " A Little Turk." The original of this picture, a certain crayon drawing entitled " A Young Turk," was duly copyrighted by the Hargreaves Manufacturing Company of Detroit, Michigan. This company has duly granted the sole right to reproduce this picture for advertising purposes to our clients, the Giles Lithographic Company, of this city, who are the sole licensees of the right of reproduction. We desire herewith to give you formal notice of this fact, and to notify you to refrain from using or in any way disposing of said cards, or any print, publication or display containing a copy or reproduction of said drawing or picture. You are also notified to surrender the cards in your possession to our clients, and also to account to them for such cards as you may have used or disposed of. Unless we hear from you at once, we shall proceed against you to the utmost extent of the law.
>
> " We remain, yours respectfully,
>
> " FRANKENHEIMER & ROSENBLATT."

The plaintiff Hastings thereupon had several interviews with Mr. Giles, the manager of the defendant, with a view to arranging a settlement, and several letters bearing upon the same subject passed between the attorneys of the parties. In the course of his negotiations with Mr. Giles, the plaintiff Hastings was informed by Giles that the defendant had made, in 1884, its lithographic copies of the " Alberta " and " Little Turk " cards from two colored photographs which it had purchased, without knowledge of the fact that the pictures were copyrighted ; that, in the fall of 1884, they had printed a large lot of these cards for the White Sewing

Machine Company, for advertising purposes; that long after these cards had been delivered to the White Sewing Machine Company the defendant was notified by the Hargreaves Manufacturing Company, of Detroit, that the "Alberta" and "Little Turk" pictures had been copyrighted by the latter company, and that the cards which the defendant had printed for the White Sewing Machine Company constituted an infringement of these copyrights; that the defendant had thereupon consulted its counsel, and had been advised by him, after a full examination of the facts, that the copyrights of the Hargreaves Manufacturing Company were valid, that defendant had no good defense, and that it should settle with the Hargreaves Company upon the best terms possible; that, in pursuance of this advice, the defendant settled with the Hargreaves Company, paid them $600, and received from them an exclusive license to reproduce the "Alberta" and "Little Turk" pictures for advertising purposes; that thereafter the defendant, acting under the advice of their counsel, gave the notice complained of to plaintiffs' customers. Hastings testified that he had no reason to doubt this statement that defendant was so acting under advice of counsel, and that it was a self-evident fact. Hastings further testified that he never asked to see the defendant's license, and that he presumed the defendant had some paper to that effect.

On June 4, 1882, plaintiffs, through their attorneys, wrote to the defendant, threatening to sue it for $10,000 damages unless it withdrew its unlawful notices within twenty-four hours. Defendant's attorneys replied, suggesting an amicable arrangement of the matter. Plaintiffs' attorneys were informed by letter from defendant's attorneys, dated June 8, 1885, that no cards without the copyright notice had been disposed of by defendant since the acquisition by them of the exclusive license; that prior to the acquisition of the exclusive license the defendant had printed a lot of cards for the White Sewing Machine Company without knowledge of the copyright of the Hargreaves Manufacturing Company; that the defendant were compelled to pay for this infringement, and had obtained an exclusive license to produce the pictures for advertising purposes; and that if plaintiffs had obtained any cards with the defendant's impress thereon, they must be cards printed before the license was obtained. The negotiations for a settlement fell

through, and on July 10, 1885, plaintiffs began the present suit. The plaintiffs sought to establish the allegation of the complaint that defendant's claim to an exclusive license to reproduce the said pictures for advertising purposes was unfounded, by proving that in the fall of 1884 the defendant had printed these cards for the White Sewing Machine Company without the copyright notice required by the United States Statutes imprinted thereon; and that it had sent two sample cards to the Fuller & Warren Company in February, 1885, without such copyright notice thereon. All this the defendant admitted it had done, both by the letter of its attorneys and by oral admission made by Giles to Hastings, but at the same time it informed plaintiffs, before this action was begun, that this was done without knowledge of the fact that the pictures were copyrighted, and before the defendant had acquired its exclusive license, and that defendant had to pay dearly for their infringement of the copyright. No evidence was introduced to show that the Hargreaves Manufacturing Company did not own copyrights of the two pictures "Alberta" and "Little Turk." No evidence was introduced to establish that the defendant did not hold an exclusive license from the Hargreaves Manufacturing Company to reproduce these pictures for advertising purposes; in fact, the plaintiff, Hastings, said that he presumed the defendants had such a paper. No evidence was introduced to establish that the defendant had issued any of the cards in question without the statutory copyright notice thereon, or had done anything to dedicate the cards to the public, after they had acquired their exclusive license.

*F. B. Candler*, for the appellants.

*John Frankenheimer*, for the respondent.

BRADY, J.:

It may be said, *in limine*, that the plaintiffs' case would seem to rest substantially on the infringement of the copyright of the Hargreaves Manufacturing Company by the defendant, as admitted by them, before they had acquired any right from that company by an exclusive license. This would in no legal view that can be presented sustain an action like this, which depends for success upon two ele-

ments, falsity and malice. (*Steward* v. *Young*, L. R., 5 C. P., 126; *Kendall* v. *Stone*, 5 N. Y., 14, 18; *Hovey* v. *Rubber Tip Pencil Co.*, 57 id., 119; *Celluloid Mfg. Co.* v. *Goodyear*, 13 Blatch., 375; *Burnett* v. *Tak*, 45 L. T. [N. S.], 743.)

It seems to have been conceded on the trial that the defendant had what was claimed by it, namely, an exclusive license; and assuming that to have been established by concession or proof, the first requisite is wanting in the plaintiff's case. The statement made by the defendant must, therefore, be assumed to be true, and what was done to protect the right secured by the license cannot be said to be malicious. Indeed, it was declared in *Hovey* v. *Rubber Tip Company* (*supra*), "if the defendant, believing itself to have an exclusive patent, issued such a notice in good faith as a warning to dealers against an invasion of its rights, it in so doing would only have discharged a moral obligation and satisfied the demands of fair dealing. In such a case a mistake, on its part, as to the validity of its right, would not have rendered it liable to an action." If the falsity of the statement were established, malice, it is true, might be inferred or pronounced upon facts and circumstances accompanying the act complained of. Here, however, one of the plaintiffs said in one of the interviews which took place between him and Mr. Giles, in relation to the subject of this action, that he never asked to see the exclusive license the defendants claimed to have secured from the Hargreaves Manufacturing Company for the production of the "Little Turk" and the "Alberta" cards for advertising purposes. He presumed, he said, they had some paper to that effect. There is no doubt it had and that he believed in its ownership of a 'license. And it · proceeded regularly to enforce its rights by the employment of competent counsel, who, after examination of the subject, wrote the letter detailed in the statement of facts and advised the course pursued by the defendant.

The manner in which they sought to protect themselves was cautious, and, under all the circumstances leading to it and distinguishing it, it could not, *per se*, create any other just impression than that they were doing what careful business men would do to protect their interests. Indeed, in *Halsey* v. *Brotherhood* (L. R., 15 Ch. D., 514; affirmed 19 id., 386), the right to give notices, the notice being *bona fide*, is recognized and declared to be a duty to protect a patent.

The rigorous maintenance of a right can never be construed as malicious. The defendant could resort to all the remedies known when its cause was just in a legal sense, and the plaintiffs can gain no right to indemnity in this action from the prior improper infringement by the defendant of the copyright under which it subsequently became licensees. Doubtless this would be a good defense in an action by the defendant for an infringement (U. S. R. S. § 4962; *Paper Bag Cases*, 105 U. S., 766; *Littlefield* v. *Perry*, 21 Wall., 295), but this is a very different controversy. The plaintiffs seek damages for slandering their title to the cards named, as a commercial article or their right to deal in them, and they have not shown their superior ownership of and right to use them — the falsity of the defendant's claim to them or malice in its assertion. The plaintiffs, indeed, must succeed on the strength of their own asserted title, and not on any infirmity of the defendant's arising from kindred violations of the law of copyright. The result of this review is, therefore, that the court did not err in refusing to leave the question of malice to the jury. There was no falsity shown of which to predicate the right to that procedure; and the dismissal of the complaint was correct for the same reason if no other existed. The exclusion of the evidence relating to damages, even if improper, could by no possibility prejudice the plaintiffs, inasmuch as the underlying weakness of their case was not removed, and left them powerless to maintain the action as we have seen.

There does not seem to spring from the record any reason why the appellants should have a new trial, and the judgment must, therefore, be affirmed, with costs.

VAN BRUNT, P. J., and DANIELS, J., concurred.

Judgment affirmed, with costs.