### DUDLEY *vs.* MAYHEW.

The courts of this state have no jurisdiction to entertain a suit instituted to restrain the infringement of a patent right.

Nor will jurisdiction be entertained, although the defendant stipulate in the cause not to raise the objection. Consent can not confer such jurisdiction.

Under the constitution and laws of the United States, the federal courts have exclusive jurisdiction in cases of infringement of patent rights.

At common law and independent of the act of congress, authors and inventors acquire no exclusive right to the benefit of their writings and discoveries.

Where a statute confers a right and prescribes adequate means of protecting it, the proprietor of the right is confined to the statutory remedy. *Per* STRONG, J.

But where the statute creating the right omits to provide against its infringement the remedy may be pursued at large by any appropriate action or proceeding.

APPEAL from the supreme court. In December, 1837, letters patent were issued by the government of the United States to Jonathan G. Hathaway, for " a new and improved mode of applying heat to cooking stoves." In March, 1840, the complainant Dudley, through several intermediate assignments, became the owner of the patent for the county of Erie, in the state

of New-York, and in 1842 he filed the bill in this cause before the vice chancellor of the eighth circuit, against the defendant Mayhew, for the purpose of restraining him from manufacturing and selling the stove which was the subject of the patent in the said county of Erie. A preliminary injunction was granted by the vice chancellor which the defendant moved to dissolve. The motion was denied, and on appeal to the chancellor, the decision of the vice chancellor was affirmed.

The defendant pleaded to the bill of complaint that the court had no jurisdiction to entertain the suit, but after being set down for argument, the plea was withdrawn, the defendant stipulating not to raise the question of jurisdiction in the cause. He then answered the bill. The complainant replied and proofs were taken. The vice chancellor having heard the cause on pleadings and proofs, sustained the bill and decreed a perpetual injunction. The defendant appealed to the chancellor, and pending the appeal, the cause became vested in the supreme court organized under the new constitution; and that court, sitting in the eighth district, reversed the decree of the vice chancellor and dismissed the bill. The complainant appealed to this court. On the argument in this court as well as in the courts below, the jurisdictional question, among others, was raised, notwithstanding the stipulation.

*S. G. Havens*, for appellant, cited *Const. U. S. art.* 3, §§ 1, 2; *Judiciary Act of* 1789, §§ 9, 11, 13, 25; *Delafield* v. *The State of Indiana*, (2 *Hill*, 159;) 3 *Story on the Const.* 624; 17 *John.* 5; 2 *Kent's Com.* 367, 368; *Gibson* v. *Woodworth*, (8 *Paige*, 132;) *Burrall* v. *Jewett*, (2 *id.* 134;) *Clark* v. *Smith*, (13 *Peters*, 203;) 9 *Law Rep.* 493; *Osborne* v. *Bank of The United States*, (9 *Wheat.* 738;) *Livingston* v. *Van Ingen*, (1 *Paine's C. C. Rep.* 45;) 3 *Story on the Const.* 1147, *and cases cited;* 1 *Chit. Plead.* 159, *Springfield ed.;* 2 *id.* 764, *and cases cited;* *Phillips on Patents*, 382; 9 *John.* 507, *and cases cited;* *Borden* v. *Crocker*, (10 *Pick.* 383;) *Beckford* v. *Hood*, (7 *T. R.* 620;) *King* v. *Harris*, (4 *id.* 205;) *Castle's case*, (*Cro. Jac.* 644.)

*J. L. Talcott,* for respondent. I. The bill in this case was filed for the sole purpose of establishing the validity of a patent, and to restrain the infringement of the same. The jurisdiction to do this is, by the constitution, vested exclusively in the federal courts, and the court of chancery of the state of New-York had no jurisdiction to entertain the suit.

The power to restrain the defendant from making and vending the stove in question does not exist in the court of chancery, independently of the constitution and laws of the United States; and no power of jurisdiction can be conferred upon the state courts by congress under the constitution. (*Constitution U. S. Art.* 3, §§ 1, 2; *Martin* v. *Hunter's Lessee,* 1 *Wheat.* 334, 5, 7; 3 *Story on the Constitution,* §§ 1748, 1749; *Mannhardt* v. *Soderstrom,* 1 *Binney,* 138; *U. S.* v. *Lathrop,* 17 *John.* 4; 1 *Kent's Com.* 1*st ed.* 372; 3 *McLean,* 186; *Curtis on Patents, p.* 452, § 406; *Phillips on Patents,* 378.)

II. And if congress has the power to confer upon the state courts jurisdiction to enforce the patent laws, yet it has not done so; but on the contrary, has vested the jurisdiction exclusively in the federal courts, by necessary implication. (*Patent Law of* 1836, § 17; 5 *Peters' Laws U. S.* 124; *Almy* v. *Harris,* 5 *John.* 175; 5 *Cowen,* 165; *Aldrich* v. *Hawkins,* 6 *Blackf.* 125; *Lang* v. *Scott,* 1 *id.* 405; *Parsons* v. *Barnard,* 7 *John.* 144, *and see Patent Law of* 1837, § 2; 5 *Peters' Laws U. S.* 191; 4 *Burr,* 2319, 2323; 5 *Mass.* 514; 2 *Watts & Serg.* 163; 2 *Penn.* 462; 1 *Paine,* 45; 9 *John.* 507.)

III. If the court of chancery had not originally any jurisdiction of the subject matter, the alledged stipulation could not confer it. It is not a personal privilege which may be waived by the parties. (*Coffin* v. *Tracy,* 3 *Caine's Rep.* 129; *Davis* v. *Packard,* 6 *Peters,* 276; *Overstreet* v. *Brown,* 4 *McCord,* 79; *Lindsley* v. *McLelland,* 1 *Bibb* 262; 3 *Blackf.* 48.

STRONG, J. delivered the opinion of the court. It was insisted on the argument before us, as it had been in the court below, by the counsel for the plaintiff, that the defendant was precluded from raising the question of jurisdiction by his

written stipulation that he would not do so, given for a val-uable consideration, and filed with the examiner as a docu-ment in the cause. It may have been a breach of faith and of good morals in the defendant to insist upon the objec-tion after his solemn agreement to waive it; but that is no reason why any court should adopt the strong measure of grant ing a perpetual injunction in a case where it has no jurisdiction. It has been long and correctly settled that not even a direct assent by the parties can confer jurisdiction, or render the judg-ment of a tribunal in a matter over which it has not by law any cognizance, effectual. (*Coffin* v. *Tracy,* 3 *Caines' Rep.* 129. *Davis* v. *Packard,* 7 *Peters,* 276.)

It was contended, although I think not strenuously, by the plaintiff's counsel, that inventors have at common law and in-dependently of the act of congress, the exclusive right to make and vend implements according to their models, and that conse-quently the statutory remedies are merely cumulative, and that the pre-existing right to resort to our state courts for redress in such cases is not impaired. It was formerly supposed in Eng-land, that the author of a literary composition had, indepen-dently of any act of parliament, the exclusive right to print and publish it for sale, and could maintain an action against any one who should invade such right. And it was so decided by a majority of the judges of the court of king's bench, in opposi-tion to the opinion of Justice Yates, in the case of *Miller* v. *Taylor,* (4 *Burr.* 2305.) But that case was overruled, and the able opinion of Judge Yates finally prevailed in the House of Lords, in the case of *Donaldson* v. *Becket et al.* decided in 1774. (7 *Bro. P. C.* 88.) The case of *Buckford* v. *Hood,* (7 *Durn. & East,* 620,) is not at all in conflict with *Donaldson* v. *Becket.* Lord Kenyon's opinion proceeded expressly on the ground that the act of parliament, while conferring a right, provided no remedy to the proprietor for its invasion, and he said that for that reason the common law remedy attached; and Judge Gross said that although the author's right was extended for a second term, yet that the statutory penalties applied only to the first; and if there was no redress at common law there would be a

right during the period prescribed in the second term without any means of enforcing it.

But although there was at first some difference of opinion among the English judges as to the alledged common law right of literary authors, none of them ever supposed that the inventor of a mechanical improvement had at common law the exclusive right to make and vend instruments according to his model, after he had published it to the world. All the judges admitted, in *Miller* v. *Taylor*, that the inventor had no such right independently of his patent. Willes, J. said, " As by the communication of an invention in trade, manufactures or machines, men are taught the art or science, they have a right to use it." Astor, J. remarked that " the property of the maker of a mechanical engine is confined to that individual thing which he has made ; and the machine made in imitation or resemblance of it is a different work in substance, materials, labor and expense, in which the maker [inventor] of the machine can not claim any property." " The imitated machine, therefore, is a new and different work." And Yates, J. said, " We all know whenever a machine is published (be it ever so useful and ingenious) the inventor has no right to it, but only by patent." That eminent judge, however, could not discover any material difference in this respect between literary works and mechanical inventions. He thought that neither of them had the requisite common law indicia of property. His opinion finally prevailed in the House of Lords, where it was fully sustained by Barons Eyre, Perrot and Adams, Chief Justice De Grey, and Lords Camden and Apsby ; and it is now the settled law in England, and is, I think, generally admitted in this country. It furnishes a strong argument against the common law claim of inventors, that it has never been successfully asserted in any of the tribunals in this state or in the mother country.

The right in question was therefore created under congressional legislation, and the important question presented in this part of the case is whether the proprietors are not confined in case of its actual or threatened invasion, to the remedies prescribed and the tribunals designated in the act. There can be

no doubt as to the power of congress to mould the right, prescribe the remedy, and designate the court in which alone it can be enforced, under the general power to promote the progress of science and useful art, by securing for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries, conferred upon that body by the constitution of the United States. (*Article* 1, § 8, *subd.* 8.) The question is whether, so far as it relates to the exclusive limitation of the courts, it has in this instance exercised that power, either in express terms or inferentially.

The 17th section of the existing act to promote the progress of useful arts, passed July 4, 1836, (*Acts of that year, p.* 244,) provides that *all* actions, suits, controversies and cases arising under any law of the United States granting or confirming to inventors the exclusive right to their inventions or discoveries, *shall be originally cognizable,* as well in equity as at law, by the circuit courts of the United States, or any district court having the power and jurisdiction of a circuit court; and then it confers expressly upon those tribunals the power to issue injunctions to prevent the violation of any right of an inventor, as secured to him by any law of the United States, upon such terms and conditions as such courts may deem reasonable. Had there been pre-existing remedies in favor of inventors independently of those resulting from congressional legislation, this act would not have taken them away. Nothing short of an express exclusion or of utter incompatibility between the pre-existing and new remedies would have done that. But congress was then legislating upon a right conferred primarily and exclusively by its own action, and was maturing a system for its origin, progress and support, and the language used must be construed in reference to those objects. That is the only logical and reasonable way of applying terms of doubtful import. When therefore the act declares that the United States circuit courts (or district courts possessing similar powers) shall have original jurisdiction of all actions, suits, controversies and cases arising under the patent laws, the language is strong to show that it was intended to confine judicial action in such cases to those

Dudley v. Mayhew.

tribunals. It is undoubtedly true that those are, to some extent, inferior courts, and would have had no jurisdiction at all in such cases unless it had been directly conferred upon them by the act, and that therefore the grant of power to them does not necessarily exclude the action of others having a co-ordinate or concurrent authority. But then if congress had intended that the state courts might take cognizance of those controversies, the terms used would have been less comprehensive—less peremptory—and although that body could not have directly conferred the power upon the state tribunals, they would have refrained from using terms which might well be interpreted as exclusive.

But I am unwilling to rest the decision of this point upon the literal construction of the act, as there are other controlling considerations about which there can be no doubt. It is very clear that when a party is confined to a statutory remedy, he must take it as it is conferred; and that where the enforcing tribunal is specified, the designation forms a part of the remedy, and all others are excluded. The rule is inapplicable of course where property or a right is conferred, and no remedy for its invasion is specified. Then the party may sustain his right or protect his property in the usual manner. That is in such cases reasonably supposed to be the intention of the legislature, as it could not be the design to confer a barren property or a fruitless right, which could not be protected or enforced any where. The same rule might prevail where the protection given by the legislature is by way of penalty to a common informer only, and no redress is given to the proprietor. The remark made by Lord Holt in *Ewen* v. *Jones*, (2 *Salk*. 415,) that wherever a statute gives a right the party shall by consequence have an action at law to recover it, is undoubtedly correct when applied to cases where the statute does not give any remedy to the proprietor for an invasion of his property or right.

The principle that where a statute confers a right, and prescribes adequate means for protecting it, the proprietor is confined to the statutory remedy, is conformable to the manifest intention of the legislature in such cases, and has therefore been properly settled in the courts of England, and in this country.

It is manifestly right where the enforcement of the claim would be, as in this case, restrictive of what was previously the common right of all. There the restriction should unquestionably be confined to the terms of the grant; so are the cases. In the case of Miller *v.* Taylor, which I have already quoted, Willes, J. upon whose opinion great reliance was placed by the plaintiff's counsel on the argument, said, "if the right vested and the offence prohibited by the act be new, no remedy or *mode of prosecution* can be pursued besides those prescribed by the act. Where the privilege to one person arises out of and consists in a new prohibition to others, there is no proceeding but for a breach of the prohibition. If the act has prescribed the remedy for the party grieved, and the *mode of prosecution*, all other modes and remedies are excluded." Astor, J. remarked in the same case, that "the question, (as to the common law remedy,) wholly depends upon the point whether it be a right newly cre ated or not. If it was, then it would receive its birth, duration and remedy from the statute, *and no other remedy could be pursued.*" Lord Mansfield, in the same case, expressed his full concurrence in the opinions of Judge Willes and Astor. In the case of Donaldson v. Becket, which I have also before quoted, six of the judges expressed their opinions in the house of lords, "that an author by the statute of 8th Anne was precluded from every remedy except on the foundation of the statute, *and on the terms and conditions prescribed thereby.*" And to that effect was the judgment of the house of lords rendered on the motion of Lord Camden, seconded by the Lord Chancellor. The decision in the subsequent case of Buckford against Hood, which I have also quoted, does not contradict this principle, but strongly confirms it. Lord Kenyon said, "it has been argued that as the statute in the same clause that creates the right, has prescribed a particular remedy, that and no other can be resorted to. And if such appeared to have been the intention of the legislature, I should have subscribed to it, however inadequate it might be thought."

The remedies given to patentees by the statute, are fully adequate for the protection of their interests, and the courts de-

Dudley *v.* Mayhew.

signated competent to declare and enforce them. Whenever the right is invaded the patentee or his assignee may institute an action on the case in which he may recover three times the amount of damages actually sustained. So also a further violation of the patentee's right may be prevented by injunction, and these remedies—all that would seem to be requisite—may be obtained in the courts of the power creating and moulding the right. Besides the right from its nature requires continued protection, and frequently new legislation, and both are peculiarly within the province of the national legislature. And there are some peculiar provisions (forming a part of the system,) relative to the action of the tribunals before whom the proceedings are conducted, which are inapplicable to our state courts, and which cannot be applied to them by congressional legislation. One of them (trebling the damages) I have already mentioned. Another is the class of defences allowed to the defendant under a notice given pursuant to the 15th section of the act. There is also a peculiar provision (in the 16th section of the act) in the case of interfering patents, allowing the court to adjudge either of them void in whole or in part; and by the 17th section of the act, the unsuccessful party, whether in an action for damages, or on a bill for an injunction, is entitled to a writ of error or appeal to the supreme court of the United States. Such writ of error or appeal, the defendant could not have, if unsuccessful in a state court; and certainly it would be against all rule to allow a suit to be instituted to enforce a right conferred by a statute, in a tribunal where the party prosecuted would be deprived of a valuable privilege given by the same statute.

The exclusive right of the inventor to make and vend his newly discovered implement, is wholly statutory. The constitution of the United States has vested the power of creating and moulding it in the general government. Whether concurrent power to legislate on this subject was reserved to the states, it is not necessary to inquire, as if it was, it has never been exercised in this state. But it has been fully and satisfactorily exercised by the national legislature, and the existing rights of

inventors depend wholly upon its enactments. The act of 1836 gives to patentees all the encouragement and protection which they can reasonably desire. Competent tribunals are designated in the act to enforce its provisions, and in terms which may well be construed to indicate an intention to confine judicial action in such cases to them. Some of the designated remedies too, are peculiar, and not such as are furnished in the same form by the common law, and can be enforced in the manner indicated only by courts whose proceedings can be controlled by congressional legislation. Even under the former patent law, which was by no means as strongly indicative of the exclusive action of the federal courts, Chief Justice Kent thought that our state tribunals could not take notice of a patent right. His language in *Livingston* v. *Van Ingen*, (9 *John.* 582,) is, "if the respondents were in possession of a patent, the state courts could not take notice of it. They can not enforce a patent right, nor can they declare a patent void if obtained by fraud or imposition. The acts of congress have vested the federal courts with the exclusive cognizance of all infringements of patent rights, and such was the opinion and decision of the supreme court of this state in a late case, *Parsons* v. *Barnard*, (7 *John.* 144.)" I do not intend to question any part of the opinion expressed by my brother Bronson, in the case of *Delafield* v. *The State of Illinois*, (2 *Hill*, 159.) That opinion received the sanction of the court for the correction of errors, and without that confirmation it would have been entitled to the highest consideration. That learned judge held in that case, that the jurisdiction of the federal courts is not made exclusive by the constitution, *proprio vigore*, but he admitted that it must necessarily be so in criminal prosecutions and penal actions, and that congress may exclude the state courts in cases which are peculiar to, and spring out of the very existence of the general government, and of which the state courts had not cognizance prior to the adoption of the constitution. Certainly the right of the patentee springs wholly from the general government, and therefore could not have been the subject of state jurisdiction antecedently to the adoption of the constitution of the United States.

Upon the whole I am satisfied that the court of chancery, before which this suit was instituted, had no jurisdiction over the subject matter; that the vice chancellor erred in awarding an injunction, and that the supreme court was right in reversing his decree. The decree of the supreme court should be affirmed, but without costs to either party.

Ordered accordingly.