McLeod, et al., v. Griffis, Guardian.

---

## McLeod, et al., v. Griffis, guardian.

1. ADMINISTRATION: *Jurisdiction of chancery over settlements of administrators.*

   A chancery court has no jurisdiction to review an administrator's settlements in the probate court, even by consent of parties. Its jurisdiction is limited to items in the settlement specifically charged to be fraudulent; but this jurisdiction may be enlarged, by consent, to any and all frauds, accidents, or mistakes in the settlements, without regard to the specific allegations in the complaint.

2. SAME: *Same: Failing to file inventory.*

   The failure of an administrator to file an inventory of the personal assets, where an appraisement list has been filed, or to itemize the notes and accounts, is not a fraud within the jurisdiction of a court of chancery, unless shown to result in a loss to the estate.

3. SAME: *Same: Failing to account for assets received.*

   An omission to account for moneys or other assets received by an administrator, is a legal fraud which chancery will correct, whether the omission was intended or by mistake. Mistakes within the jurisdiction of the court are such acts or omissions as were unintended by the administrator and injurious to the estate.

McLeod, et al., v. Griffis, Guardian.

4. SAME: *Same.*

A sale of goods at retail, according to the usual course of merchandise, under the orders of the probate court, is not *per se* fraudulent; but any loss to the estate from such proceeding will authorize an inquiry into the *bona fides* of the administrator in making the sale.

5. SAME: *Same.*

An administrator cannot, even under the orders of the probate court, purchase a stock of goods belonging to the estate; and a court of chancery may surcharge him with any loss resulting therefrom.

6. SAME: *Same: Changing assets.*

The probate court may authorize an administrator to convert one class of assets into another to obtain a sale of them, and it is only the *bona fides* of the administrator, in such proceeding, that a court of chancery can inquire into.


APPEAL from *Lee* Circuit Court in Chancery.

Hon. M. T. SANDERS, Circuit Judge.  ·


*Tappan & Hornor* for Appellant.

While the bill charges *fraud*, yet the fraud is to be inferred from the settlements of the administrator, and consists solely in his failure to charge himself with a sufficient debit on proceeds of a saw-mill, and in being allowed improper credits. These were mere irregularities or errors, correctable only by appeal. The estate was finally settled in the probate court, which had *exclusive* jurisdiction of the matter. No exceptions were filed, nor any appeal taken; yet within the time allowed for an appeal this bill is filed, charging *fraud*, to give jurisdiction to a court of chancery to reopen the entire business, and compel the administrator to again account for transactions which he had from the confirmation of his first settlement dismissed from his mind, and lost all trace of the evidence supporting them.

As to the jurisdiction of chancery courts in such cases, see *Trimble v. James, 40 Ark., 393.*

McLeod, et al., v. Griffis, Guardian.

Neither the decree, nor the master's report, disclose any fraud, but mere errors or irregularities; not one *specific* act or omission is pointed out which could, even inferentially, be construed into a fraud.

The judgment and orders of the probate court were final, and no subsequent action of the same court or any other tribunal, except on appeal, or for *fraud proven*, could set them aside. *30 Ark., 66; 33 Id., 727; 34 Id., 63; 39 Id.,256.*

*John M. Hewitt* and *W. H. Howes* for Appellees.

The bill in this case clearly and specifically charges fraud, and sets out acts and omissions which amount to fraud *per se*, or legal fraud. *40 Ark., 403, 416.* The answer admits irregularities, and *by consent of all parties*, the cause was referred to a master to re-state the accounts. This consent and the cross-complaint clearly gave the master authority to re-state the entire account, and do justice and equity between the parties. No exceptions were taken by the appellants to the reference, and they could make none, for it was made by their consent upon the record.

The master's report is conclusive, unless it clearly appears that he has acted under a mistake, or abused or exceeded his authority. *1 Stockt., N. J., 309; 14 Vt., 514; 7 Cush., 222; 36 Me., 127; Dan. Chy. Pl. & Pr., pp. 1248, 1298 n. 5, 1321 n. 5, etc.*

Distinguish this case from *Trimble v. James, 40 Ark., 393,* and review the exceptions to the master's report *seriatim*, submitting that justice has been done, and that the decree should be affirmed.

Hon. SOL. F. CLARK, Special Judge. In September, 1875, Bernard McLeod, a resident of Lee county, died intestate,

leaving considerable estate in personal property and in lands, leaving a widow, Emma McLeod, and three children, Bettie, Kate and Mamie, his sole heirs at law, and the latter two (Kate and Mamie) infants under the age of twenty-one years.

Letters of administration were granted to the appellant, Geo. W. McLeod, who was a brother of the deceased, on the 22d day of September, 1875, and having given bond, with the defendants, Emma Griffis, H. N. Hutton, B. B. Nunnally, F. M. Hill, J. H. Warfield, W. J. Gellaen, J. H. Fowlkes, J. D. Lounsbery and C. W. Hickey, as his securities, proceeded to administer and settle up the estate. On the 6th of November, 1875, he filed in the probate court of that county an appraisement of the personal property, together with a statement of the aggregate amount of choses in action (notes and accounts) estimating such choses in action at their face value.

The administrator filed no inventory separate and distinct from such appraisement list. So appraised and estimated, the personal estate amounted to the sum of $33,627.65. On the 27th of January, 1877, he filed his first annual account current, in which he is charged with a balance in his hands of $5608.29. On November 19, 1877, he filed a second account current, in which he is charged with a balance in his hands of $7795.17. And on the 7th of January, 1879, he filed his account for settlement; in which accounts were balanced. To none of these accounts or settlements was there any exception, and they were in regular and due course confirmed by the probate court, and the administrator and his securities were fully discharged. Upon the final settlement the administrator reports that the whole amount of personal assets, including rents of real estate, which had been disbursed by him, was the sum of $46,461.84.

After the granting of letters to said Geo. W. McLeod, the widow, Emma, intermarried with the appellee, R. D. Griffis,

McLeod, et al., v. Griffis, Guardian.

and Griffis having been appointed guardian of the said two minor children, Kate and Mamie, on the 29th of September, 1879, filed his complaint in equity in the case, as such guardian, against the appellant and the sureties on his administrator's bond, in which, after alleging the facts above stated, he charged the administrator with extensive frauds and mistakes in his management of the estate and in his settlements, consisting not only of false charges, but of fraudulent omission to charge himself with assets which came to his hands, and after such specific charges of fraud, covering most of the items in the administrator's accounts and involving an estimated amount of $8726.11, alleged to be due the estate on a proper statement of accounts, further alleges that the complainant has reason to believe and does believe that there are other gross frauds in such settlement accounts covered up in such a manner as to defy detection without the aid of a court of chancery; and prays that the said defendant may be required to produce a full list of all sums received or paid out, from whom or what source received, and to whom paid and for what purposes; and that the accounts be referred to a master to be examined and re-stated; and that the plaintiff might have judgment of the chancery court for the sum of $8726.11, as was so found to be due, and such further sum as might be shown to be due upon final hearing, etc.

Among the numerous other charges of mistakes and frauds in the complaint is the charge that the notes and accounts due the estate were only inventoried and set out in the aggregate.

To this complaint the administrator and the other defendants, his bondsmen, (except the widow Emma, wife of complainant, who was on the administrator's bond,) put in an answer and a demurrer, and attempt to make the answer a cross-petition.

In this answer they admit that the administrator's accounts are very defective, inartificially made up, and contain many errors and deficiencies, but they deny all actual or intentional fraud on the part of the administrator; and in regard to many of the charges as to specific items they admit the truth of the allegations in the complaint, but attribute it to error and inadvertence; and they admit that the notes and accounts should have been specifically set out.

By way of cross-matter defendants claim that many items of charges against the administrator, in his accounts as settled, are erroneous; that he has not taken credit in many instances where he was entitled to do so ; and admit that the accounts covering the whole administration ought to be re-stated, alleging that if properly re-stated the estate would be found to be indebted to the administrator in a large amount, and they expressly submit to the jurisdiction of the chancellor to re-state the account and render a final decree.

The cause set out in the demurrer to complaint was a want of parties, alleging that Bettie McLeod had inter-married with Frank Bedford, that she and her husband were necessary parties, and resided in Tennessee.

By exhibits the answer and cross-complaint set out specifically what purport to be all the notes and accounts charged to be omitted in the inventory and settlements of the administrator, swelling the record to a great length.

Frank Bedford and wife were made parties by order of publication. An amended complaint and answer to the cross-complaint was put in; and other motions and pleadings not material here to be mentioned.

The chancellor, on the 6th of November, 1880, granted an order, founded expressly upon the consent of both parties, submitting it to John M. Parrott, as master in chancery, to re-state the accounts of the administrator, directing the master to

McLeod, et al., v. Griffis, Guardian.

charge him with all the assets of the estate which came to his hands, and to give him credit with all disbursements properly made and for all desperate debts which could not be collected, and with the maximum commissions allowed by law.

The accounts were accordingly re-stated by the master, who filed his report at the April term, 1882, setting out his account in full, and in which the administrator is charged with the sum of $51,174.18 and credited with the sum of $46,259.44, leaving a balance due the estate from the administrator of $4914.74. To this the master added interest at six per cent. from the 7th of January, 1879, to the date of final settlement, January 7, 1882, a term of three years, a sum of $884.65, making the aggregate of $5799.39.

To this account exceptions were filed by both parties, some of which were sustained and others overruled, and the court, as a result, rendered a decree against the administrator and his sureties in which the court determines that the total assets with which the said administrator was chargeable was the sum of $52,067.93, and the total credits to which he was entitled was the sum of $46,096.99, showing a balance of $5970.94, and to this the court added interest at six per cent. to the date of the decree, making the aggregate sum of $7533.33, which was decreed to be paid by the administrator and his bondsmen to the clerk of the court, who was made commissioner of the court to receive the same, within sixty days from the rendition of the decree, or that execution should issue as at law.

The first and most important question for our consideration is whether the chancery court exceeded its jurisdiction, or rather its judicial powers, in its proceedings and decree in the case.

This court has repeatedly held that a court of chancery has no original or appellate jurisdiction in matters of probate and the administration of estates. The Constitution of 1874, in

1. Jurisdiction of chancery over administrator's settlements.

parceling out to the several courts and defining their jurisdiction, has bestowed this branch of jurisprudence upon the probate courts, and their decrees cannot be reviewed or reversed in a collateral proceeding in chancery. The orders of that court upon allowing claims and confirming accounts and settlements of administrators are judgments of a court of competent jurisdiction, and ample provisions have been made for appeals from such orders and decrees to the circuit and supreme courts for any mere errors and irregularities in their proceedings; and the mode of redress for any such errors and irregularities is through such appeal to the tribunals constitutionally authorized to review such proceedings and correct such errors. A court of chancery can only inquire into such orders and proceedings in the same manner and upon the same grounds that it may investigate the judgments and proceedings of any and all other courts, *i. e.*, upon charges of fraud, accident or mistake, and the correction of such frauds and mistakes is the extent of their constitutional power. See the cases of *Osborne, et al., v. Graham, 30 Ark., 66; Reinhardt v. Gartrell, 33 Ark., 727; Mock v. Pleasants, 34 Ark., 63; Nathan v. Lehman, et al., 39 Ark., 256; Trimble v. James, ad'r, 40 Ark., 393; Dyer, et al., v. Jacoway, et al., 42 Ark., 186.*

In the case of *Reinhardt v. Gartrell,* which in most points resembles this case, this court, by Justice EAKIN, delivering the opinion, used this language:

"We think the chancellor should have found the particular points in which the fraud consisted, and have confined the reference to the correction of the settlement as to those points where the errors originally occurred, and where they entered into subsequent statements; and this finding *should itself be always upon the allegations of the bill pointing out the fraud and not upon vague and general charges.* General assertions of fraudulent intent add nothing to the strength of a bill unless made applicable to specific acts or declarations."

And in the later case of *Dyer v. Jacoway* this court, in further defining the limit of this ground of jurisdiction, said:

" The jurisdiction of courts of chancery to interfere with the proceedings for the settlement of estates in the probate courts rests upon the same grounds with their interference with the judgments and proceedings of any other courts whatever. It does not rest upon any jurisdiction of the original subject matter, but upon this broad principle, that courts of equity will not allow the proceedings of any other courts to be made the means of perpetrating successful frauds, or will relieve against accident or mistake which other courts could neither prevent nor cure, but which, unrelieved, would cause irreparable wrong and injustice."

It is manifest that if the chancery court be permitted to assume a general jurisdiction to review the proceedings of the probate courts in the matter of the settlement of estates, or to set aside or disregard their proceedings, and to proceed by virtue of any original ground of jurisdiction in itself to re-adjudicate the matters involved in those courts, there is no good reason why it should not assume the same jurisdiction with regard to the proceedings of the circuit courts, or the supreme court, or any other court. It may be conceded that the chancery court has an ancient jurisdiction, in matters of account and over administrators as trustees and their estates as trust property, and that it has not, and never had, any such jurisdiction over subjects within the cognizance of circuit courts and other courts of law. But the provisions of the Constitution have effectually deprived these courts of this branch of their ancient jurisdiction, and, as we have said, bestowed it upon the probate courts. And under these constitutional provisions the relation of these courts to the probate court and its powers has become the same as its relation to other courts. We cannot disregard these constitutional provisions. To do so would not only be to obliterate the boundary lines between the

32——45

powers of the several courts, as established by the Constitution, but it would be effectually to usurp the powers and duties of the probate courts, and render them utterly useless. For what would be the use of these courts and their proceedings, if another tribunal, with constitutional power to enforce its decrees, might treat them as nullities and adjudicate the same subject matters over again at the instigation of any of the parties? Doubtless, the argument that without the exercise of such jurisdiction in the chancery court, minor heirs, incapable of watching the proceedings in the probate court, often suffer through the faithlessness of their trustees and guardians, is very cogent and impressive, and appeals strongly to our sympathies. But such arguments address themselves, not to our judicial understandings, but to our feelings as men. The judicial mind is compelled to disregard them as appertaining to the field of political or legislative policy.

A glance, however, at the foregoing statement of the proceedings in this case will show that the chancery court did not confine itself to its constitutional limits, as thus defined here and in the repeated decisions of this court referred to. On the contrary, without regard to any charges or any proof of any frauds or accidents or mistakes in the orders or proceedings of the probate court, the court referred the case to the master to re-state the accounts of the administrator, and the same were by the master so re-stated, as well the items and matters upon which no issue of fraud was made, and the regularity and justice of which were not questioned, either by the charges or the evidence, as those that were. The orders and proceedings of that court are entirely disregarded and treated as nullities. It is manifest that to sustain these proceedings of the chancery court, we must hold that the orders and judgments of the probate courts import no verity whatever, and that the courts of chancery have original jurisdiction to settle the accounts of administrators, unless we can find some ground upon

McLeod, et al., v. Griffis, Guardian.

which such proceedings can be sustained as an exception to these general principles. And it has been very ably argued by the learned counsel for the appellees, that the court here had authority and jurisdiction for its proceedings by consent of the defendants; and they urge that, while denying any intentional frauds, they have admitted great irregularities and errors in the settlements in the probate court. That in their answer they do not even deny the specific facts, constituting the charges of fraud, except as to the intention of the administrator, and fully consent that the account might be re-stated. That by a cross-bill they have alleged that such errors and mistakes were mainly to the detriment of the administrator himself, and that upon a corrected statement the estate would be found indebted to him, and prayed a decree in his behalf for any balance which might be found due him upon such re-statement. All of which is very true. And they present for our consideration two questions; one as to how far consent of parties can give jurisdiction, and the other as to how far the jurisdiction of the court may be enlarged by the cross-complaint.

Consent cannot give jurisdiction.

The former question we will first consider. It has been stated as a rule that consent can give jurisdiction over parties, but not over the subject matters of litigation. But this rule is by no means universally true, for the subject matter often depends upon the pleadings; and generally consent can enlarge the jurisdiction of the court to such subjects as are within the constitutional or judicial power, but no consent can confer jurisdiction over the subject matter where none is given by law. See *Dudley v. Mayhew, 3 N. Y., 9; Beach v. Nixon, 9 N. Y., 36; Avards v. Rhodes, 8 Exch., 312; Lawrence v. Wilcox, 1 Ad. & E., 941.*

But may enlarge it.

And in *Wilson v. Mason, 3 Ark., 494,* this
"under the Constitution of this St
tribunals cannot

a subject matter over which another has the exclusive original cognizance."

We are clear, therefore, that the consent of the defendants could not give to the chancery court any power or authority to inquire into the proceedings of the probate court, farther than to determine how far they were vitiated or affected by fraud, accident or mistake. To this extent the jurisdiction could be extended by the consent of the parties. See *Strout's Ex'r v. Van Zandt, 30 Ark., 89.*

By this, however, we mean to say that had the administra- tor denied all frauds, accidents and mistakes in his accounts in his answer and objected to a reference of the case to a master, the inquiry of the court would have been limited to the items specifically charged to be fraudulent, and the circumstances of the fraud, accident or mistake alleged must have been so alleged as to be capable of proof. In other words, the plaintiff must have stated a case which, if true, would have entitled him to relief. The consent of the defendants enlarged the jurisdic- tion to an inquiry into any and all frauds, accidents or mistakes in the records of the case in the probate court, and entitled the plaintiff to recover for any of those which he could establish by proof, for the constitutional power of the court extended thus far and no farther; and this without regard to the specific allegations in the complaint. No agreement or consent on the part of the defendants could go farther.

To the extent that the orders and decrees of the probate court were not thus impeached, they should have been allowed to stand. No consent of parties could confer power to dis- regard them, as we have seen the court did.

The next question is, has the defendant by his cross-com- entitled himself or the plaintiff to have the proceedings investigated further than to inquire into the Does it in any manner enlarge may be a ques-

McLeod, et al., v. Griffis, Guardian.

tion whether the administrator can be allowed, either by cross-complaint, as in this case, or by original bill, to have his accounts, after the assets have been fully disbursed and the administration closed, opened and re-stated so as to obtain a decree for a balance in his behalf. But as we regard this point immaterial in this case, we express no opinion upon it. We think there is no ground set up in the cross-complaint, much less proved by the evidence, which could entitle the defendant to any affirmative relief, or any right which would not be available to him under his response to the bill; for the cross-complaint admits more errors in the proceedings against the administrator than those in his behalf.

In the case of *Trimble and wife v. James, adm'r, 40 Ark., 393,* we held that the administrator, without any cross-complaint, was entitled to be credited with all errors or mistakes found in his behalf, on the ground that the plaintiffs seeking equity were bound to do equity. And in the equitable jurisdiction over accounts this is a principle as old as the chancery courts.

We do not think, therefore, the court, by reason of anything in the cross-complaint, acquired any additional power to inquire into the proceedings of the probate court. It may be, and often is, no doubt, a matter of great difficulty for the chancellor, upon the charges and evidence before him, to distinguish in a matter of complicated accounts what is fraudulent or the result of accident or mistake, from what is mere error, remediable only on appeal. But this is a difficulty inherent in the subject, and must be met by the patient exercise of the discriminating power of the chancellor. A vast amount of evidence has been taken in this case, very much of which has no tendency to prove either fraud, accident or mistake prejudicial to the estate. But we cannot say there is no such evidence in the record; and the disposition, which we feel strained to make of the case, will render it unnecess particularize what, among the accounts and n

McLeod, et al., v. Griffis, Guardian.

be regarded as within the cognizance of the court, as shown by such evidence.

**2. Failing to file inventory, no fraud.** It is proper to state, however, that the failure to file an inventory of the personal assets, an appraisement list having been filed, or the failure to itemize the list of notes and accounts, would not be a fraud within the jurisdiction of the court unless shown to result in a loss to the estate. If the assets, including the notes and accounts (choses in action), were subsequently duly administered and accounted for, such omissions would be only irregularities not remediable in this collateral proceeding.

**3. Failing to account for assets.** An omission to account for moneys or other assets actually received by the administrator has been held by this court to be a legal fraud, which the court will correct whether the omission was intended or by mistake. Mistakes of which the court will take cognizance must be such acts or omissions as were unintended by the administrator, and resulted in loss to the estate.

**4. SAME.** The proceedings of the administrator to dispose of a stock of goods at private sales at retail, according to the ordinary course of merchandising, under the orders of the court, though not a regular proceeding by law, would not be *per se* fraudulent, but any loss to the estate, proved to be the result of such proceeding, will authorize the inquiry into the *bona fides* of the administrator in making such sales.

**5. SAME.** So the purchase of a stock of goods, belonging to the estate, by the administrator, although done under the orders of the probate court, is forbidden by law, and it is fully competent in this proceeding to surcharge the administrator with any loss which can be shown to have resulted therefrom.

It is within the discretion of the probate court to allow the ator to convert one class of assets into another, such ber, in order to obtain a sale and disposition

thereof, the administrator accounting in good faith for the proceeds and gains of such transaction. The *bona fides* of the administrator, in such proceeding, can only be inquired into.

A strong appeal is made to us to sustain the jurisdiction, on the ground that to set aside all the proceedings of the administrator and re-state his accounts was indispensable to the object of administering justice; that the rights of the parties could not be reached in any other way; and we are not disposed to deny that this is, in a general sense, true, and that, in such general sense, the proceedings and decree of the court below have done justice to the parties.

But what is right and just in a moral sense in the breast of the chancellor is not the standard by which his powers are to be exercised, but by what the law prescribes. Justice is supposed to be centered in the remedies which the law has provided, and the courts are not at liberty to depart from the letter of these provisions to enforce moral convictions of right and wrong.

It follows that the decree of the court below must be reversed and set aside, and the cause remanded for further proceedings as herein directed. Let the case be again referred to the master to state an account upon the principles herein announced, using for the purpose the pleadings, exhibits and proof in the record, charging the administrator with such losses to the estate as the proofs show to be the result of intentional or legal fraud, or as occurred through accident or mistake, and crediting him with such mistakes or errors as are shown to be in his favor, and charging him with legal interest on any balance against him from the date of his final settlement in the probate court.

Hon. W. W. SMITH did not sit in this case.