## SCHALKENBACH v. NATIONAL VENTILATING CO.

(Supreme Court, Appellate Division, First Department. December 11, 1908.)

1. PATENTS (§ 216*)—CONTRACTS—CANCELLATION—REQUISITES—SUIT IN EQUITY.
    Where either plaintiff or defendant was entitled to terminate a contract for the manufacture and sale of patented structures, and plaintiff's discharge from his employment by defendant constituted a total breach of the contract, then on plaintiff's election and notice to cancel the contract it would be canceled for all purposes without action of a court of equity.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 329; Dec. Dig. § 216.*]

2. PATENTS (§ 214*)—LICENSE CONTRACT—CANCELLATION—INJUNCTION.
    Where the decision of a court of equity is necessary to cancel a license to use patented structures or with respect to the sale thereof, equity may enjoin the manufacture or sale pendente lite, or until the contract has been annulled by judicial decree.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 321; Dec. Dig. § 214.*]

3. COURTS (§ 489*)—FEDERAL COURTS—EXCLUSIVE JURISDICTION—PATENT.
    Where no decree is necessary to the cancellation of a license to manufacture or sell a patented structure, the manufacture or sale thereof by the licensee after notice of cancellation would constitute an infringement, over which the federal courts have exclusive jurisdiction.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. § 1327; Dec. Dig. § 489.*]

4. INJUNCTION (§ 134*)—TEMPORARY INJUNCTION—RIGHT.
    Where a state court had no jurisdiction to grant a permanent injunction in a suit to cancel a license to manufacture and sell a patented struc-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ture, plaintiff was required to show a clear right to an injunction before a temporary injunction would be issued pendente lite.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 303; Dec. Dig. § 134.*]

5. INJUNCTION (§ 137*)—TEMPORARY INJUNCTION—RIGHT TO RELIEF.

Where, in a suit in a state court to terminate defendant's alleged rights under a license to manufacture and sell certain patented structures, complainant did not show that defendant was irresponsible or that adequate relief could be obtained by an accounting for profits made by defendant pendente lite, the fact that complainant claimed defendant was so manufacturing the structures as to injure the good repute of the invention was insufficient to entitle complainant to a temporary injunction restraining defendant's manufacture and sale; defendant claiming that it was manufacturing and selling the structures in accordance with the patents, and that it would sustain far greater damage by the issuance of the injunction than complainant would sustain if it was denied.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 307; Dec. Dig. § 137.*]

Appeal from Special Term.

Action by Robert N. Schalkenbach against the National Ventilating Company. From an order granting a temporary injunction, defendant appeals. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGH-LIN, CLARKE, and SCOTT, JJ.

Henry F. Cochrane, for appellant.

Frederic Cyrus Leubuscher (William Mack, on the brief), for respondent.

LAUGHLIN, J. This is an action for an injunction to restrain the defendant from manufacturing and selling glazed structures embodying plaintiff's inventions, specified in an agreement in writing between the parties, and to have the contract declared terminated as of January 1, 1907, and for an accounting under the contract and for damages for a breach of it. The injunction order, which was issued on the summons, complaint, and affidavits, enjoins the defendant from manufacturing, selling, delivering, and erecting glazed structures embodying plaintiff's inventions, and from making estimates and bids entering into contracts therefor. The agreement was made on the 1st day of June, 1904. It recites that the plaintiff has invented certain new and useful improvements in glazed structures, covered by certain letters patent and by an application for letters patent, and certain others for which he is about to apply for letters patent, and that the defendant was willing to undertake the manufacture and sale thereof. The defendant was given the sole and exclusive right to manufacture and sell glazed structures embodying any or all of the plaintiff's inventions described in the contract for the term of five years from the date thereof, and it agreed to undertake the manufacture and sale of the glazed structures, "or such of them as it may find useful, and to continue such manufacture and sale during the term of this agreement, or· so long within said term as it shall be found profitable to do so," and to account to the plaintiff for 25 per cent. of the profits accruing from said business and to pay the same at the end of each year. The

plaintiff agreed "to devote his entire time and best efforts" to the business during the term of the agreement, "in whatever capacity" the defendant might elect, and to give to the business the sole and exclusive use of any and all other new and useful improvements in glazed structures that he might thereafter invent during the term of the agreement. The defendant further agreed to advance to the plaintiff the sum of $150 per month "during the term of this agreement, or so long within said term as he shall continue faithfully to discharge his duties hereunder, and so long within said term as.it shall be found profitable to continue said business of manufacturing and selling glazed structures; such advances to be a first charge against his share of the profits." By the agreement the plaintiff gave to the defendant an option "to purchase outright, on or before the expiration of the time of this agreement, a three-fourths interest in said described business and the good will thereof, and in said inventions, patents, pending applications for patents, etc., for the sum of fifty thousand ($50,000) dollars cash." In the event of the exercise of this option, the plaintiff agreed to accept 25 per cent. of the capital stock of the company to be organized for conducting the business "as representing his remaining one-quarter interest therein." The last clause of the agreement provided that, in the event of a discontinuance of the agreement at any time before the expiration of the term of five years, "the dies and machinery made or purchased specially for this business may, at the option of the plaintiff, be turned over to him on a fair valuation of such dies and machinery at that time."

The plaintiff alleges that after the execution of the contract the defendant entered upon the manufacture and sale of glazed structures thereunder, embodying his inventions, and that he began to devote and continued to devote his entire time and best efforts to the business, but that the defendant, in violation of the agreement, neglected and refused to render annual accounts of the manufacture and sale of said glazed structures thereunder during the years 1905 and 1906, although such accounts were duly demanded. The plaintiff further alleges that on or about the 1st day of January, 1907, he was notified by defendant that his services were no longer required, that no further advances would be made to him, and that he was discharged, no reason being assigned therefor, and the defendant failed to give a reason on being requested so to do; that he thereafter duly tendered his services and demanded the advances agreed to be made to him under the contract, but the defendant refused to accept his services or to make the advances; that after his discharge he offered to purchase the dies and machinery as provided in the contract, but the defendant refused to sell the same; that in March, 1907, the defendant delivered to plaintiff an account purporting to show that the manufacture and sale of glazed structures had been unprofitable from the outset and was then unprofitable, and thereafter plaintiff notified defendant that on account of its violations of the contract and of the business being unprofitable he elected to discontinue the agreement; that the defendant, in violation of the agreement, has ever since continued the manufacture and sale of said glazed structures, and has failed and refused to employ plaintiff, or to make the advances provided for in

the agreement, or to render an account of such manufacture and sale. It is further alleged in the complaint that the defendant threatens to make contracts for the use of said glazed structures which cannot be fulfilled within the five years; that, if the work has been unprofitable, it is owing to the incompetence and negligence of the defendant and its agents; that defendant has also violated the contract, in that it has failed to pay the costs, fees, and expenses of filing new applications for obtaining letters patent on improvements in said glazed structures made by plaintiff, and that notwithstanding this fact the defendant has embodied and is embodying these improvements in its estimates and contracts, and threatens to continue doing so; that defendant has omitted in a number of large contracts, and still omits and refuses and threatens to continue to omit and refuse, to use lead strips forming one of the most important parts of the plaintiff's invention, they being used under the surface-bearing caps which render the structures water-tight; and that the use of such lead strips has made the plaintiff's invention well and favorably known to the trade, and their omission has greatly damaged and will continue to damage the good repute of the invention. The plaintiff further alleges performance of the agreement on his part, and that he has sustained damages in the sum of $100,000, and has no equitable remedy at law.

The learned counsel for the appellant contends that the complaint, in so far as it asks for injunctive relief, is predicated, not upon the contract, but upon an infringement of the plaintiff's patent rights. This argument is based upon the allegation that the plaintiff elected to terminate the contract on account of the defendant's violations thereof. If, as the plaintiff alleges, the defendant violated the contract, he had a right to cancel it, as he alleges that he did, and this would be effectual without the aid of a court of equity. Henderson v. Dougherty, 95 App. Div. 346, 351, 88 N. Y. Supp. 665. If the plaintiff be right in his contention that he as well as the defendant had a right to elect to terminate the contract when it was found that the manufacture and sale of the glazed structures were unprofitable, or in his contention that under the contract he was entitled to be employed as long as the defendant continued to manufacture and sell the glazed structures, and that therefore his discharge constituted a total breach of the contract, then it is quite clear in this jurisdiction that, upon his election and notice to cancel the contract, it would be canceled for all purposes without the adjudication of a court of equity. In cases where the decision of a court of equity is necessary to cancel or annul a contract conferring a license to use a patented article, or with respect to a sale thereof, courts of equity have jurisdiction, where the facts require such relief, to enjoin the manufacture or sale of a patented article pending the litigation and until the contract has been annulled by the judicial decree. Hartell v. Tilghman, 99 U. S. 547, 25 L. Ed. 357; Hyatt v. Ingalls et al., 124 N. Y. 93, 26 N. E. 285. If, however, without a decree of the court, the contract has been canceled, as the plaintiff alleges, then it is the same as if the license had never been issued, and the defendant cannot be said to be manufacturing under the contract, and would, in those circumstances, be guilty of an infringement of the plaintiff's patent rights, over which the federal courts only

have jurisdiction. Dudley v. Mayhew, 3 N. Y. 9; Hovey et al. v. Rubber Tip Pencil Co., 57 N. Y. 119, 15 Am. Rep. 470; De Witt v. Elmira Nobles Mfg. Co., 66 N. Y. 459, 23 Am. Rep. 73; Continental Store Service Co. v. Clark et al., 100 N. Y. 365, 3 N. E. 335; Hat Sweat Mfg. Co. v. Reinoehl, 102 N. Y. 167, 6 N. E. 264, 55 Am. Rep. 793; Henderson v. Dougherty, supra; White v. Rankin, 144 U. S. 628, 12 Sup. Ct. 768, 36 L. Ed. 569.

If, however, the plaintiff be in a position to contend that the allegations of the complaint are insufficient to show that the contract has not been canceled and that a judicial decree is necessary to accomplish that purpose, and if the plaintiff may become entitled to a decree canceling the contract, still I am of opinion that he was not entitled to the injunction. In that event it might be said that the injunction would be based upon the contract, and that the state courts have jurisdiction; for, if the plaintiff has become entitled to a decree of the court annulling the contract on account of the defendant's violation thereof, but either the contract or the nature of the violations be such that the contract can be said to continue in force until it is annulled by a decree of the court, the plaintiff might in that event, on proper facts shown, be entitled to an injunction enjoining defendant from enjoying the fruits of the contract pending the action. Plaintiff, however, has not here shown, sufficiently clear to warrant the issuance of an injunction on that theory, that there have been violations of the contract which warrant its cancellation. It is to be borne in mind that this is a case in which no permanent injunction can be issued restraining the defendant from manufacturing and selling these glazed structures. The most that this court could do in any event would be to decree that the contract be annulled and that the defendant has no further right thereunder to manufacture and sell said structures. For any further violation of his rights the plaintiff would be relegated to the federal courts; for the patents may be invalid, and the defendant or any other person may have the right to disregard them, and there is evidence in the record upon which a claim of invalidity is asserted. In a case of this nature, where no permanent injunction may be entered, the plaintiff should show a very clear right to an injunction before a temporary injunction should be issued.

The plaintiff asserts that he has no adequate remedy at law; but he does not show, so far as the further manufacture and sale of the glazed structures pending the action is concerned, that the defendant is irresponsible, or that he cannot obtain adequate relief by an accounting for the profits. The single particular in which it is alleged the defendant is not following the specifications for the construction of the patented device is quite insufficient to warrant a temporary injunction upon the theory upon which it is claimed, namely, that the good repute of the plaintiff's invention will be greatly damaged. The opposing affidavits show that plaintiff was discharged for good cause; that defendant did not elect to cancel the contract to manufacture and sell, and that it is manufacturing and selling the glazed structures in all respects according to the patents; that it is about to close a profitable contract, and will sustain far greater damage by the issuance of

the injunction than plaintiff will sustain if it be not issued. The right of plaintiff to the injunction, therefore, is not clear upon any theory.

It follows, therefore, that the order should be reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur.